UNITED FUEL GAS COMPANY *et al v.* HAYS OIL & GAS COMPANY *et al.*

(No. 7082)

Submitted February 16, 1932.   Decided February 23, 1932.

*S. P. Bell,* and *L. E. Given,* for plaintiffs in error.

*Harper & Baker, Harold A. Ritz,* and *B. J. Pettigrew,* for defendants in error.

WOODS, JUDGE:

This action in ejectment was instituted to recover mineral rights underlying a tract of $8\frac{1}{3}$ acres in Roane county. A verdict for defendant was, on motion of plaintiffs, set aside

and a new trial awarded, on the ground that if the land and the minerals in question belonged to defendants' immediate grantor, Mary J. Goad, it became forfeited in 1906 to the State for non-payment of taxes, and that after that time title vested in plaintiffs through possession under color of title and payment of taxes for the statutory period.

It appears that in 1854, Samuel Estep, a predecessor in title of Mary J. Goad, obtained 426 acres from Polsey and Connell, and that in 1865, the last named parties conveyed a tract of 844 acres to the north thereof to William Green. Thus both parties claim a common source of title. The initial call of the Green tract began at the northwestern corner of the Estep tract and followed the northern line thereof to its eastern limit. Mary Goad took the 426 acres, plus a 28½ acre tract to the south and contiguous thereto from her husband, by will. In 1894, she conveyed a triangular tract of 49½ acres in the northeastern portion of the 426 acre tract to her daughter, F. M. Robinson, taking a stone marked "S. E." as the notheastern corner of the Estep tract. Mary J. Goad, prior to 1901, had conveyed away several other parcels, leaving (according to acreage in the title papers) 326 acres. In that year, she conveyed 326 acres to her son, John Goad, who at the time had a survey made, apparently accepting a prolongation of the northern line of the Robinson tract as his north line. In 1915, after the property of Goad had been leased for oil and gas, he decided that the north line of the F. M. Robinson tract did not coincide with the southern boundary of the Green property, and that the northeast corner of the Estep tract was some ten poles north of the "S. E." stone. Thereupon John Goad had a survey made, and, at the completion thereof, had his mother give him a quit claim deed for the strip of land to the north of the F. M. Robinson tract, or said 8⅓ acres. In 1918, he placed this 8⅓ acre tract on the land books and back-taxed same for five years. It appears from the jury verdict that the true north line of the 426 acre tract is at the place contended for by John Goad and other parties defendant, that it runs to a point some ten poles north of stone "S. E." Accepting that as true, the 8⅓ acre tract was not on the land books

in the name of anyone of the defendants during the period 1901 to 1918.

Let us now look to plaintiff's claim to the 8⅓ acre tract. It appears that William Green in 1879 still had title to 350 acres of the original 844 acre tract. In that year, by a single instrument, he conveyed part of said 350 acres to his daughter, Helen E. Grose, in fee, and the residue to his son, Robert N. Green, for life, with remainder to the children of his said son. In 1905, Helen E. Grose sold the minerals in 72½ acres adjoining the Estep-Green line to L. V. Koontz. In 1907, said 350 acre tract was partitioned, giving Helen E. Grose 150 acres, "Begining at a stone marked with 'S. E.'; thence * * * S. 52 E. 64 poles to stake in John Goad's line; N. 67 E. 140 poles to place of beginning." The last call follows the north line of the F. M. Robinson tract. In 1911, Helen E. Grose gave a correction deed to Koontz for 82½ acres of minerals, conveying *in solido* one tract by an outer boundary including the disputed acreage.

Defendants contend that title could not be taken out of the State in the absence of actual possession of the 8⅓ acre tract—that color of title is not enough. A well for oil and gas was drilled in 1916 on the Koontz tract, but outside of the tract in dispute. Will this possession extend to the tract in litigation? In the case of *State* v. *Morgan,* 75 W. Va. 92, 83 S. E. 288, this court held: "The possession of an owner who under color of title enters upon lands which include within their exterior boundaries part of a tract title to which vested in the state by forfeiture, and for ten years actually occupies portions of the inclusive tract but no part of the forfeited land, being actual as to such portions, will be held and treated, under sec. 3, Art. 13, Const., as actual possesion of so much of the forfeited tract as is included within the bounds of the larger area not in actual or virtual possession of the state, the former owner or others claiming under them."

In the case of *State* v. *Haymond,* 84 W. Va. 292, 100 S. E. 81, it is stated that the state invites and encourages a person to comply with the conditions which will vest the forfeited title in him. The principle laid down in *State* v. *Morgan,*

*supra*, has been followed in *Ahner* v. *Young*, 84 W. Va. 336, 346, 99 S. E. 552; *State* v. *Coal & Oil Co.*, 86 W. Va. 256, 259, 103 S. E. 50; *State* v. *Land Co.*, 98 W. Va. 563, 569, 128 S. E. 286. A very exhaustive discussion of this question is found in the last cited case.

The 150 acres was taxed "in fee" to Helen E. Grose for the years 1907 to 1916, both inclusive. In 1917, the minerals, for the first time, were assessed in the name of Koontz. Attorneys for the defendants claim that payment of taxes by Helen E. Grose did not inure to the benefit of Koontz, the party owning the minerals, on account of the fact that there had been a severance of the surface and minerals, citing *Kiser* v. *McLean*, 67 W. Va. 294, 67 S. E. 725; *Wallace* v. *Coal Co.*, 58 W. Va. 278, 52 S. E. 485; *Preston* v. *White*, 57 W. Va. 278, 50 S. E. 236; *Peterson* v. *Hall*, 57 W. Va. 535, 50 S. E. 603; *Newman* v. *Newman*, 60 W. Va. 371, 55 S. E. 377. As we see it, the foregoing cases are not in point. While there had been a severance as to title, there had been no sevrance as to taxation. Until such severance as to taxation, there was a privity in estate between Grose and Koontz, and since she paid the taxes on the fee for the time required to take title from the State, such action on her part would inure, under her contract with Koontz, to the latter's benefit. As held in some of our cases, it is even conclusively presumed, in absence of anything to the contrary, that the minerals are still charged with the surface. *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317, 61 S. E. 307; *State* v. *Lowe*, 46 W. Va. 451, 33 S. E. 271.

But defendants deny the right of plaintiffs to maintain the present action on the ground of sale of title of the minerals to the State in 1927 for the 1925 taxes. A school land suit was instituted. It appears that Koontz came in and asked to and did redeem the title to the minerals. This, however, was after the present action of ejectment had been instituted. Koontz, however, shows in the record that the delinquent list certified to the auditor did not bear the required statutory affidavit (Code 1923, chap. 30, sec. 21), and, therefore, that the State got no title—that the sale was void. *McGhee* v. *Sampselle*, 47 W. Va. 352, 34 S. E. 815. The defendants seek

to avoid this failure to record the sheriff's affidavit with the delinquent list by saying that the evidence adduced on the trial does not show that the list in the auditor's office likewise failed to have the sheriff's affidavit annexed thereto. This Court has held that it must appear of record in the county court clerk's office where the records of muniments of title are kept and that there was such a record in the auditor's office is not sufficient. *Leach* v. *Weaver*, 97 W. Va. 72, 76, 124 S. E. 505. Defendants make the further contention that even if the sale to the State was void that plaintiffs are estopped by the decree of redemption entered in the school commissioner's suit. Knootz had a right, as between himself and state to pay any back-taxes, whether title really was in the State or not. So far as strangers were concerned, the State had no title therein.

That the absence of the sheriff's affidavit to the delinquent list, as filed in the county clerk's office, renders the sale of such land void, is unquestionable under the foregoing decisions. Such defense could be asserted at any time by anyone injured thereby. Suffice it to say, Koontz could have asserted it. We cannot see that he is estopped from asserting it in this suit, because he paid the taxes in the void suit. At least, the defendants here were not prejudiced by such action on his part. They do not stand in any way in privity to the State, and they do not claim any title from the State which they now urge was vested in the State at the time the ejectment suit was brought. It is a well known doctrine that a judgment binds only parties and privies, not strangers to it. Against strangers it is not evidence to prove any facts involved in the judgment. *Smith* v. *White*, 63 W. Va. 472, 60 S. E. 404.

Therefore, we hold that the possession of the 8⅓ acre tract by Helen E. Grose and the payment of taxes under the partition decree on the full value of the property for the period of ten years, operates to invest in her and those holding in privity with her (the plaintiffs herein) the entire estate in said tract of land by virtue of the section of the constitution cited hereinbefore. Believing so, we must uphold the judgment of the trial court.

*Affirmed.*