# CHARLESTON.

EAGLE LAND COMPANY *v.* WINIFRED FERRELL *et al.*

Submitted November 11, 1924.   Decided December 2, 1924.

1.  QUIETING TITLE—*Owner in Possession May Maintain Suit to Remove as Cloud Deed or Claim Covering Any Part Not in Possession of Adverse Claimant.*

    One with title to and possession of land may maintain a suit in equity to remove as a cloud any deed or claim covering his land or any part of it not in possession of the adverse claimant.  (p. 611.)

    (Quieting Title, 32 Cyc. p. 1341).

2.  ADVERSE POSSESSION—*Occasional Intermittent Acts of Trespass Held Not Such Adverse Possession as Vests Title.*

When defendant relies on color of title and possession under it, and his possession has amounted to occasional acts of trespass, and was intermittent, and not continuous and adverse for the requisite period of time, he has not shown such adverse possession of the land as the law requires in such cases to give him good title.   (p. 613.)

(Adverse Possession, 2 C. J. § 7).

NOTE:  Parenthetical references by Editors C. J.—Cyc.   Not part of syllabi.

Appeal from Circuit Court, Raleigh County.

Suit by the Eagle Land Company against Winifred Ferrell and another. From a decree for defendants, plaintiff appeals.

*Reversed and rendered.*

*Brown, Jackson & Knight,* for appellants.
*H. A. Dunn* and *A. P. Farley,* for appellees.

MILLER, JUDGE:

The avowed object of the bill was to remove as a cloud on plaintiff's title to a tract of 14 acres and 38 poles of land on Clear Fork of Coal River, in Raleigh County, the claim of the defendant Ferrell to five acres, described in the report of the surveyor Wilson, who executed the order of survey filed in the cause, as follows: "Beginning at a stake on a cliff, on north side of Clear Fork, thence S. 30° 15′ E. 240.7 feet to a spruce pine on bank of Clear Fork, a corner to the tract of land, conveyed to Sylvester Ferrell by Douglas B. Gordon, and others, March 22, 1901, thence with a line of said Gordon tract S. 76° 35′ E. 1327.9 feet to an old fording place in Clear Fork; thence leaving the said Gordon tract 67° 35′ E. 209 feet to a large poplar stump on south side of Clear Creek, a corner to Thomas Levisay and Rutter and Etting Tracts. Thence N. 75° 01′ 1662 feet to the beginning."

This tract was undoubtedly a part of the plaintiff's tract, originally of 2,700 acres known as the Galigo tract or survey, which adjoins on the south a tract of ten acres reserved in the deed from Douglas and Basil Gordon to Ackerman and Voegle, trustees, and others, of April 4, 1900, through whom

97 W. Va.

plaintiff acquired title to the larger tract. And the bill alleges, and the record shows, that the ten acres so reserved was, on March 22, 1901, sold and conveyed by the Gordons to Sylvester Ferrell; and the fact that the larger and the smaller tract so reserved and conveyed adjoin each other can not be controverted; and the deed to said Ferrell so identifies the said ten acre tract. It describes it as bounded by a straight line running from the pine near Clear Fork to Coal River; thence S. 77¼° E. 76 poles to the pond of the creek above Ferrell's house; thence with the meanders of the Clear Fork of Coal River, and as being within the Galigo survey, and the same land on which Ferrell then resided.

After so acquiring the ten acres, Sylvester Ferrell, the defendant and his wife joining therein, by deed of October 9, 1916, conveyed the ten acres and a small tract of one and one-half acres some distance from the first tract, also a part of the original Galigo survey, to John L. Dickinson, who, on October 16, 1916, conveyed both tracts to the Eagle Land Company, the plaintiff. So that by these deeds the plaintiff acquired title to the several tracts referred to, all located within the boundary of the original Galigo survey.

The bill alleges that prior to the date of his deed to said Dickinson for the two small tracts, namely, on September 7, 1916, Sylvester Ferrell had executed an option to him, and of which the said Winifred Ferrell, the co-grantee in his deed, had notice.

And the bill alleges, and the evidence we think shows, that on or about the date of the deed to Dickinson the said Sylvester and Winifred Ferrell entered into a conspiracy to defraud the Eagle Land Company of the tract of 14 acres and 38 poles adjoining on the north the said ten acre tract, which tract along with the ten acre tract to the south of it was held by said Sylvester Ferrell under lease, originally from Dickinson and later from plaintiff; that in furtherance of said scheme Sylvester Ferrell, on October 9, 1916, the date of his deed to Dickinson, executed to his son, Winifred, a deed for said 14 acres and 38 poles, who on December 3, 1917, reconveyed the same to Sylvester, his father, and who, on April 12, 1919, reconveyed it to said Winifred, the defendant; and they are the three deeds so exchanged between father and son that the

bill seeks to remove as clouds on plaintiff's title to the land described. The defendant denies knowledge of the option of his father to Dickinson, which for description refers to adjoining lands and calls for 20 acres, more or less, but the bill alleges, and the proof shows clearly, that the option covers the land in controversy, or a greater part of it.

The real defense to the bill relates solely to the five acres, which by description is for the most part wholly within the 14 acres and 38 poles. No part of these five acres, according to the description, is within the boundary of the ten acres, but practically all of it, except small triangular pieces at the western and eastern ends thereof, is within the boundary of the 14 acres and 38 poles. The defendant claims the part of the five acres within the boundary of the tract described in the three deeds beclouding plaintiff's title; and his claim to this is based on color of title and his alleged adverse possession, alleged by him to have extended over a period of twenty-eight years, and payment of taxes thereon for ten years or more prior to the institution of the present suit.

The decree below adjudged the plaintiff not entitled to the relief prayed for, and dismissed his bill without reservations; and the plaintiff has appealed. As the answer disclaims all the land covered by the three deeds except the five acres, the plaintiff was certainly entitled to a decree removing those deeds as clouds on the residue of the 14 acres and 38 poles. The plaintiff showed possession of the land by tenants, at least that portion of the 14 acres and 38 poles not including the five acres claimed by defendant. In *Bonafede* v. *Feed & Storage Co.,* 81 W. Va. 313, 315, a suit to remove cloud, it was decided that one in possession may maintain a suit in equity to set aside a deed which constitutes a cloud on his title, and that if the allegation respecting title and possession be true, he is clearly entitled in a court of equity to have the deeds of which he complains set aside so far as they include any part of his land. And in *Perdue* v. *Ballengee,* 87 W. Va. 618, we held that equity has jurisdiction, at the suit of the owner, to remove as clouds upon his title a deed purporting to convey an interest therein, even though the same may be entirely ineffectual for that purpose. In this case the deed in question purported to con-

vey only an easement in a road for the benefit of an adjoining tract, and we held that the plaintiff was not so far ousted of possession by the use of the road as to preclude a suit to remove as a cloud the deed conveying the same.

If the ground of the decision below was that the plaintiff had a remedy at law, the court should not have disposed of the case on its merits without reserving to plaintiff his right to prosecute such an action, which was not done. That the plaintiff was in possession of the larger tract by tenants was not shown by the production of the leases, which it was proved were in writing; but the fact of possession, not the terms or land covered by them, may be proved as an independent fact. A competent witness for plaintiff swore that a tenant of plaintiff occupied the Sylvester Ferrell ten acres, and he undertook to say that that lease included all the mountain side above the ten acres and the few acres claimed by defendant; but as the lease in writing was not produced, we can not consider the evidence as to the boundary covered by the lease.

As the deeds in question are on record in Raleigh County, and defendant disclaims all the land outside the five acres, equity alone has jurisdiction to remove them as clouds on the title of the plaintiff to any part of his land covered thereby. *Gilbert* v. *McCreary,* 87 W. Va. 56; 1 Pomeroy Eq. Jur., sec. 279.

The question of defendant's possession of the five acre tract and his right to maintain the same is the main question in the case. He proved no deed to any part of the 14 acres and 38 poles, except the deeds between himself and his father beclouding plaintiff's title, of 1916, 1917 and 1919, respectively. And though in his evidence he says: "My father and my mother both made a deed to me;" he does not produce it, nor show where the land described is located, nor distinctly say it was ever any part of the 14 acres and 38 poles. On cross-examination he refers to the date of the alleged deed from his father and mentions the year 1894, but admits that his claim to the five acres is based on the deed from his father for the 14 acres and 38 poles. He swears that the five acres was enclosed by a fence until some nine or ten years ago, when, he says, it was burned up; and he and other witnesses

say that since then it has not been enclosed by any fence nor the *pedis possessio* maintained, except as to a small parcel said to contain from a quarter to an acre of land, half of it outside, the other half perhaps within the five acres described, but is occupied not by any house or other building, but simply, the last year, as a vegetable garden and a part of it planted in peas. He says that a part of the remainder was sown in grass, but it was all laid out as commons and unenclosed.

Defendant undertook to strengthen his possession and title by adverse possession by a show of payment of taxes. He produced tax receipts for the years 1917, (none for 1918), 1919, 1920, 1921, and 1922. That of 1917 is unsigned by the sheriff. In none of them except the one for the year 1922 does defendant appear to have been charged with a tract of five acres; and in that year the five acres is charged as "Surface," and for the first time the 14 acres and 38 poles charged in the preceding years as "Surface," is charged in "Fee," showing manipulation of the form of assessment for the last year—the year the suit was brought—for some purpose. We do not regard the fact as necessary to a decision of this case; but might not the defendant's claim to title by possession and color of title be decreed void for fraud in the making of the deeds between his father and himself? In *State* v. *King,* 77 W. Va. 37, we decided that a deed for land in which the grantor has no interest with the specific purpose of using the same for color of title, can not be so used by him. His fraud denies it the virtue, force and effect of color of title in his hands.

The plaintiff shows by the tax records for Raleigh County, for the years 1909 to 1915, both inclusive, that neither the defendant nor his father, Sylvester Ferrell, had been taxed in those years with any land in Clear Fork District, where the land in question is situated.

Defendant admits he never lived on this five acres, nor any part of the 14 acres and 38 poles. While he says that prior to ten years before suit the five acres were enclosed by a fence, he does not say who put the fence there; and his possession, if any, was of a very precarious character. After the fence burned, he had no show of possession outside of occasional

acts of trespass, by pasturing and grubbing on the land, and perhaps planting a few trees. For eight to ten years prior to the suit, he had no other show or evidence of possession on any part of the land outside of the little enclosure on the west, overlapping .a very small part of the five acres; it laid out in the commons. His possession was not such as to have given any one about to purchase the land notice of his claim. His father, who took a lease on the ten acres, after he sold it to Dickinson, renewed by plaintiff after its purchase from Dickinson, and which lease the evidence tends to show covered the entire five acres and some lands north of it, was not called as a witness. If called, we may rightfully assume his evidence would have been against defendant on the question of his alleged possession of the five acres. When the plaintiff first purchased the Galigo tract, in June, 1916, there was no fence enclosing the five acres. When asked about this fence, defendant said he put it up about 1919, but evidently thinking he would have to have it up for years, he corrected himself by saying: "No, it was before that time, 1919 and 1923, that is only about four years ago." In a case where the facts as to alleged possession by defendant were of like character to those in this case, we said in another case that defendant wholly failed to show such continuous possession of the land as the law requires. *Wilson* v. *Braden,* 56 W. Va. 372. His small inclosure referred to was not sufficient to give such notice.

The case is poorly developed on both sides, but as we view the record, we are of opinion that there should have been a decree in favor of the plaintiff cancelling and annulling the said three deeds covering the 14 acres and 38 poles of land, and removing them and defendant's claim as clouds thereon, in so far as they affect the same, and enjoining defendant perpetually from further trespass thereon, and we will so decree.

*Reversed and rendered.*