No. 17,800.

DELIA ANDERSON, ET AL. *v.* L. E. TURNER, ET AL.
(296 P. [2d] 1044)

Decided May 7, 1956.

Mr. F. RICHARD HITE, for plaintiffs in error.

Mr. JAMES J. PATTERSON, Mr. FRANK J. REINHARD, JR., for defendants in error.

454

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

This is another segment of the perennial squabble between the parties hereto over a mountain roadway or easement on their properties. One form of the same controversy was before us in *Turner v. Anderson,* 130 Colo. 275, 274 P. (2d) 972. It is unfortunate that too many elements other than fairness and common sense enter into these controversies. A quiet title suit is the proper antidote for this continuing dispute.

The Turners filed their complaint in Gilpin county alleging ownership of various plots of land and sought a preliminary and permanent injunction against the Andersons from trespassing on the property described. They further allege that defendants Anderson removed a fence plaintiffs Turner had erected across their property. Defendants Anderson answered denying Turner's ownership of the land described in plaintiffs' complaint and alleging that the fence which was removed, was erected by persons unknown to them, and was across a roadway on defendants' property, and that the fence was removed by them so that they could enjoy the use of their property. The real controversy is: On whose property does a so-called roadway exist?

Surveys and maps were introduced in evidence and in tracing a thread of title through the various other exhibits it is to be noted that a remarkable inaccuracy exists as to descriptions and locations of the properties involved. One so-called engineer's survey shows on its face that the corners for the survey were pointed out by Mr. Turner, in whose interest the survey was made. Trial was had to the court and on May 22, 1955, the court stated:

"There has been some testimony from one engineer that it does not close. And the other engineer, he didn't

follow some of the lines. He says one, two, and I think three as indicated on Plaintiffs' Exhibit A. But there is nothing accurate. The correct procedure, of course, would be, first, to quiet the title. That is to first get the title. There isn't any question but what if this road is on Mr. Turner's property, he would be entitled to injunctive relief. There isn't any question about it. The question is whether or not this highway now traverses Mr. Turner's property. Under that Supreme Court decision, there isn't any question in my mind that he would be entitled to it if it does. You do have a question of the title there * * *."

After making this statement the court continued the hearing in order that a more accurate survey could be made before a final ruling. Such a survey was never furnished and the court, on June 27, 1955, in this injunction proceeding, found and determined that plaintiffs Turner were the owners of the real property set forth in their complaint; that the road claimed by defendants Anderson traverses the property of plaintiffs; and entered a permanent injunction against defendants Anderson from using said roadway or interfering with the right of plaintiffs to its use.

The observations of the trial court in May are correct and supported by the record and nothing further was presented that would alter such finding. Plaintiffs' Exhibit A purports to be a survey of the property owned by the Turners and was identified by one Meehan, a surveyor. Called as a witness for plaintiffs, he testified that only a part of the lines on the exhibits were actually surveyed, and the following vividly portrays the possible inaccuracies of the exhibit.

"Q. You say the Lot 2 is tied to that corner? "A. (No response). "Q. Are any of these lines as portrayed on the exhibit lines that were told to you by somebody as being the correct lines? "A. Yes, sir. "Q. And they were not a result of an accurate survey? "A. No, I can't say that; some of them were corners that Dr. Turner thought

were his; whereas others have been determined by the reading of the deed. "Q. These corners that Dr. Turner thought were his were not surveyed, you did not check them for accuracy? "A. They didn't tie into the deed as far as I remember."

The result of this is that this exhibit was hearsay reduced to a drawing and writing. A pertinent observation on this kind of a situation is to be found in 20 Am. Jur. page 831:

"A private survey of land made under the direction and for the convenience of the owner or other interested party is not evidence for him or those claiming through him."

■ ■ It would serve no good purpose to detail the testimony concerning the meanderings of a so-called roadway on the mountain property where the parties hereto are neighbors. It is contended that Exhibit A, the survey just discussed, was erroneously admitted in evidence and we find this contention to be sound. This particular action should be terminated on a more positive ground, that is, that the title to the properties involved cannot be quieted in this injunction proceedings. We believe it to be the general rule that an injunction against trespass should not be granted unless or until complainant's title is settled, either by admission or legally adjudicated. Injunction could be damaging where the rights of the parties are not clear and certain. "Where complainant's right is doubtful or his title is in dispute, a perpetual injunction cannot be obtained until the doubt is removed and the right made certain." 43 C.J.S. p. 431.

It is certain that both parties here do not own the disputed ground over which defendants claim an easement for ingress and egress to their property. As stated before, an examination of all the exhibits purporting to be a dubious chain of title discloses a hopeless confusion and uncertainty and is aptly described by plaintiffs' last witness who testified as follows:

"Q. Were you able to follow all of the descriptions in

all of the deeds? "A. Generally, yes. "Q. Do all those descriptions close? "A. No. "Q. They don't? "A. No. "Q. Then you have to guess a little bit? "A. This whole mess is just a mess."

\*　　\*　　\*

"Q. You had access to all of the deeds? "A. Yes, I read them. "Q. Of property owned by Mr. Turner? "A. Yes. "Q. And in looking at all those deeds, you could not reconcile all the land descriptions therein contained? "A. It would be difficult. I couldn't, no, I couldn't. "Q. It was impossible, correct? "A. From my point of view, yes."

From these excerpts of plaintiffs' evidence it would appear that plaintiffs come nearer showing a lack of title than they do to proving a clear and convincing right to the ground. We cannot approve the possibility of title to property being quieted in an injunction suit by a plaintiff who has a surveyor prepare a survey that embodies plaintiff's theory of the case; and moreover, is an expression of his desires.

The injunctive relief granted by the trial court was patently erroneous and the judgment entered thereon is reversed and the cause remanded with directions to dismiss plaintiffs' complaint.